**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0448, <u>Barbara Stewart v. Jeffrey Murdock</u>, the court on January 8, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiff, Barbara Heggie f/k/a Barbara Stewart, appeals an order of the Circuit Court (<u>Boyle</u>, J.), following a hearing, denying her second motion to extend a stalking final order of protection against the defendant, Jeffrey Murdock. <u>See</u> RSA 633:3-a, III-c (Supp. 2015). She argues that the trial court erred by excluding evidence of the defendant's behavior that had occurred prior to the effective date of the protective order, and by relying upon allegedly irrelevant factors in finding that good cause did not exist to extend the protective order.

A stalking protective order may not be issued for a period greater than one year. RSA 633:3-a, III-c. Upon a showing of good cause, however, it may be extended for an additional year after its expiration, and for periods of up to five years thereafter. <u>Id</u>. To determine whether good cause exists to extend a protective order, the trial court must assess whether the current conditions are such that there still exists a concern for the safety and well-being of the plaintiff, after reviewing the circumstances of the original stalking, any violation of the protective order, and any present and reasonable fear of the plaintiff. <u>MacPherson v. Weiner</u>, 158 N.H. 6, 10 (2008). We will uphold the trial court's determination of whether good cause exists unless it is unsupported by the evidence or erroneous as a matter of law. <u>See</u> <u>id</u>.

The original protective order in this case was effective from November 14, 2012, until November 13, 2013, and the plaintiff testified that the defendant obeyed it while it was in effect. On May 2, 2014, approximately six months after the original order had expired, the plaintiff filed a motion to extend it for one year, asserting that after it had expired, the defendant had begun to contact her by, for instance, posting a comment on a video that she had uploaded to the website YouTube, subscribing to her YouTube channels, replying to an e-mail that had been sent to numerous people, including the plaintiff, and sending the plaintiff a one-word Facebook message consisting of a derogatory term. She also claimed that, on three occasions while the protective

order was in effect, the defendant had sent e-mails to people who he had reason to know might forward them to her.

On May 12, 2014, the parties reached an agreement to extend the original protective order for one year. Thus, the trial court extended the protective order for one year effective May 12, 2014. We note that the parties do not question whether the trial court had authority under RSA 633:3-a, III-c to "extend" a protective order that had already expired. Accordingly, we will assume for purposes of this appeal that the extended order was valid.

The evidence establishes that the parties both have an interest in Irish music. As a result of the protective order, the defendant testified that he stopped attending or performing at Irish music events in the Concord area that the plaintiff was likely to attend. Instead, he limited his music activity to the Seacoast area. One such venue where the defendant regularly performed was a restaurant in Newmarket, which hosted a weekly "Irish night" music session. According to the defendant, he had performed at the Irish night session for two-and-a-half years, at times with friends and family members of the plaintiff.

On February 12, 2015, the plaintiff attended the Irish night session at the Newmarket restaurant, aware that the defendant might be there prior to attending. When the defendant saw the plaintiff, he packed up his equipment and brought it to his car in several trips. The plaintiff testified that the defendant packed slowly, and that it took him longer to pack than it should have taken. After the defendant had removed his instruments from the restaurant, the plaintiff testified that he returned and began yelling and complaining to other persons about her presence and the fact that he had to leave. At one point, the defendant was within six feet of the plaintiff. Two days later, the defendant sent an e-mail to several people, but not the plaintiff, using a derogatory term to refer to her, and complaining that her decision to attend the music session had forced him to leave. One of the recipients of the e-mail forwarded it to a friend of the plaintiff, who in turn sent it to her.

The plaintiff filed the present motion to extend the protective order on April 24, 2015, seeking to extend it for a period of five years, relying upon the February 12 incident and the subsequent e-mail to argue that there was good cause to extend the order. At a hearing on the motion, the defendant objected when the plaintiff's counsel asked her whether the defendant's behavior had changed after the protective order had expired in November 2013, asserting that "we're talking about the time between May 14[, 2014] and the present time not anything before May 14th." The plaintiff's counsel responded, "My point is, Your Honor, that as soon as the restraining order was dropped the last time, [the defendant's] behavior went right back to where it had been that caused the order to be in effect to begin with." The trial court sustained the objection, stating, "What we're talking about here is from May 14th last year until this year." The plaintiff's counsel responded, "Okay."

2

Subsequently, during his cross-examination, the defendant asserted that he had never "done anything bad to" the plaintiff. When the plaintiff's counsel asked whether the police had ever told him not to contact the plaintiff, the defendant objected, asserting that "[w]e're getting beyond . . . the May 14th of 2014 date." The plaintiff's counsel responded, "His testimony was that he did nothing. He's never done anything to hurt her, Your Honor. I think that opens the door for me . . . to go back to –." The trial court interjected, "Not to go back to the original order from 2012." The plaintiff's counsel then ended the cross-examination of the defendant, and did not offer any further argument why the defendant's conduct prior to May 14, 2014 was admissible.

The trial court denied the motion to extend the protective order, finding that good cause did not exist to extend it. In its order, the trial court specifically found that: (1) the defendant had not initiated contact with the plaintiff; (2) the defendant had gone out of his way to avoid the plaintiff, including leaving the February 12 music session after she had arrived; (3) the plaintiff attended the February 12 music session knowing that the defendant was likely to be there; (4) the February 12 incident occurred on the seacoast; (5) the defendant had complied with the restraining order, and had stayed away from Concord; and (6) the plaintiff is an attorney who is familiar with the stalking statute. The trial court subsequently denied the plaintiff's motion for reconsideration, finding that the plaintiff had initiated the February 12 contact with the defendant, that her actions were not reasonable, that the defendant had had no other contact with the plaintiff, and that the defendant did not want further contact with her. This appeal followed.

We first address the plaintiff's arguments that the trial court erred by excluding evidence of the defendant's behavior that had occurred prior to the effective date of the protective order. The plaintiff argues that, because the trial court, under MacPherson, was obligated to consider the circumstances of the original stalking in order to determine whether good cause existed under RSA 633:3-a, III-c, the trial court unsustainably exercised its discretion by excluding evidence of the defendant's pre-May 2014 behavior. Further, the plaintiff argues that the ruling prejudiced her ability to establish that she had a present and reasonable fear of the defendant. Finally, the plaintiff argues that, even if evidence of the defendant's pre-May 2014 conduct was not admissible, she was entitled to introduce such evidence pursuant to the "specific contradiction," doctrine, see e.g., State v. Wamala, 158 N.H. 583, 589 (2009), in order to counter a misleading advantage gained by the defendant in testifying that he had never "done anything bad" to the plaintiff.

"We generally require issues to be raised at the earliest possible time because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance." Cogswell Farm Condo. Ass'n v. Tower Group, Inc., 167 N.H. 245, 253 (2015) (quotation omitted). To preserve an argument that the trial court erroneously excluded evidence at

trial, a party generally must make an offer of proof that apprises the trial court of the specific nature of the evidence and why it is admissible. See, e.g., State v. Costella, 166 N.H. 705, 714-15 (2014). A post-trial motion for reconsideration is not sufficiently timely to preserve an argument regarding an evidentiary ruling. See Broderick v. Watts, 136 N.H. 153, 168-69 (1992).

In this case, we conclude that the plaintiff has not preserved her arguments that the trial court erroneously excluded evidence of the defendant's behavior that occurred prior to the effective date of the protective order. At no point during the plaintiff's offers of proof did she assert, as she does on appeal, that RSA 633:3-a, III-c, as construed in MacPherson, obligated the trial court to consider the circumstances of the original stalking in order to determine whether good cause existed, and that the evidence she sought to introduce was relevant for that purpose. Nor did she argue that such evidence would have established that she had a present and reasonable fear of the defendant. Indeed, the plaintiff did not even articulate what specific behavior she would have described beyond generally asserting that the "behavior went right back to where it had been that caused the order to be in effect to begin with." See Costella, 166 N.H. at 715 (although defense counsel asserted that the witness had knowledge that the defendant had no motive, counsel never apprised the trial court as to the substance of the witness's expected testimony). Although the plaintiff did assert that the defendant had "open[ed] the door," she did not articulate, as she does on appeal, that the defendant's testimony had created "the grossly misleading impression that there had never been any reason for a restraining order," or how the testimony she would have offered would have cured that impression. To the extent that the plaintiff may have more fully articulated her arguments in her motion for reconsideration, the motion was not sufficient to preserve the arguments. See Broderick, 136 N.H. at 168-69.

We next address whether the trial court erred by basing its decision upon irrelevant considerations. The plaintiff argues that her prior knowledge that the defendant would be present at the Newmarket restaurant when she attended the music session, her membership in the New Hampshire Bar, and her knowledge of the stalking statute are not facts that are relevant under New Hampshire Rule of Evidence 401 in determining whether good cause existed to extend the protective order. She further argues that the probative value of such facts was substantially outweighed by the danger of unfair prejudice or confusion of the issues under New Hampshire Rule of Evidence 403.

The trial court determined that good cause did not exist to extend the protective order, finding that it was the plaintiff, and not the defendant, who had caused the contact between the parties at the Newmarket restaurant to occur. Whether it was the defendant who had caused the only contact that had occurred between the parties during a time period governed by the protective order was clearly relevant in determining whether there was good cause to extend the order. See MacPherson, 158 N.H. at 10. Even if we were

4

to assume, however, that the plaintiff's prior knowledge that the defendant would be present at the Newmarket restaurant, her membership in the New Hampshire Bar, and her knowledge of the stalking statute were not considerations that were material to the determination of good cause, we conclude that the trial court's finding that good cause did not exist was neither unsupported by the evidence nor erroneous as a matter of law. Id.

We deny the defendant's motion for attorney's fees and costs, without prejudice to the defendant filing a request for taxation of costs pursuant to Rule 23.

Affirmed.

Dalianis, C.J., and Hicks and Conboy, JJ., concurred.

**Eileen Fox,
Clerk**